0016 Ochoa v. Davis. You may proceed with your argument. May it please the Court. Jeremy Shepherds on behalf of Abel Ochoa, the Appellant. Today we ask that this Court remand Mr. Ochoa's case to the District Court for determination in the first instance of the impact of Aestas v. Davis on the resolution of this case. Due to both the importance and the complexity of this question, I plan on devoting most, if not all, of my time to this issue here today. Remand is appropriate in this case for a variety of reasons. First and foremost, in denying funding to Mr. Ochoa under Section 3599, the District Court heavily relied on portions of this circuit's precedent that would later be overturned in the Aestas decision. In that decision, the Supreme Court held that this circuit's substantial needs test placed a higher burden than warranted on petitioners seeking funding under Section 3599. Here, in its order denying funding, the District Court recited that standard, noted that Mr. Ochoa had not shown how the requested funding would substantially improve his chances of success, and also included a lengthy quote from this circuit's opinion in Crutzenger v. Stevens from 2014, outlining how petitioners can never show a substantial need for funding to pursue a procedurally defaulted claim. The Aestas Court also touched directly on this prior rule of the circuit, noting that it was too restrictive in light of the Martinez and Trevino decisions, particularly because funding under Section 3599 could be used to allow a petitioner to establish cause to overcome procedural default of the underlying claims. Due to the reliance that the District Court placed on this since-overturned standard, and in recognition of the broad discretion and wide latitude given to District Courts determining whether to grant or deny funding under Section 3599, it would be appropriate to allow it to reconsider in light of the Aestas decision. Are you saying that in any case, we should start remanding? I don't think it's required in every case. I think there's a couple of things that the Court can look to to determine whether a remand is the appropriate option. First would be the reliance the District Court placed on the overturned standard, and second would be looking towards some of the framework outlined in Aestas regarding the potential viability of the underlying claims. How does this claim have any viability whatsoever? Mr. Ochoa has produced a significant amount of evidence, both in the federal petition, and that's also apparent from the face of the State Court record itself, about the incomplete, delayed, and significantly abbreviated mitigation investigation conducted by his trial counsel. Here, we know that they did not retain a mitigation specialist until jury selection was ongoing and shortly before the trial began. There's evidence in the record regarding her difficulties in getting information from trial counsel, that she was unable to obtain necessary records, and that there were a significant amount of witnesses that she had hoped to speak to that she was unable to. But if state trial counsel was ineffective, how is that evidence that the state habeas counsel is deficient, which is what we're trying to look at here? I think Your Honor should look to the continuance motion that was filed approximately one week before Mr. Ochoa's trial began. In that, trial counsel finally requested a continuance, in large part because the mitigation investigation was not yet complete. So this is evidence in the record that state habeas counsel was or should have been aware of regarding the incomplete investigation. That continuance motion also contained an affidavit from Mr. Ochoa's trial mitigation specialist, outlining a number of the factors that I just listed regarding the delayed and incomplete mitigation investigation. So here, state habeas counsel merely had to look to the state court record to see that initial investigation into mitigating circumstances would be warranted. Instead, state habeas counsel requested no funding for an investigator, no funding for a mitigation specialist or other expert, and conducted almost no extra record investigation. A reasonable state habeas counsel in this circumstance would have been able to look to the continuance motion and the attached affidavit as a clear red flag and sign to him that further investigation into mitigation is warranted in this case. And with that said, doesn't state habeas counsel have an obligation to conduct a thorough independent investigation? Absolutely, Your Honor. State habeas counsel has that duty. Trial counsel, of course, has that duty, as does federal counsel. And we can see from the record here that that independent investigation just simply never occurred, despite, as I mentioned before, the evidence simply apparent on the face of the state court record that trial counsel was ineffective. So are you seeking a remand that we hold the rest of the case while that one issue is remanded? Yes, Your Honor. We would ask that the rest of the case be held while the funding issue is remanded to the district court. Only that one issue? Only that one issue, and then the district court would be able to reassess the funding motion that was denied back in 2014 to see whether Mr. Ochoa is able to meet the standard outlined in ISDIS. That standard from ISDIS, as this Court knows, is that funding should be reasonably necessary when a reasonable attorney would consider it to be sufficiently important. That's what the Supreme Court has told us in ISDIS, and a number of the factors that we just discussed regarding the delayed and incomplete investigation support that Mr. Ochoa will be able to meet that standard on remand. Okay. What if we can determine, though, that the COA is not viable, assuming arguendo? At this stage, Mr. Ochoa has not actually sought a certificate of appealability regarding the Wiggins claim itself. That is in large part because he has requested funding recognizing that the Wiggins claim has not yet been developed and that the funding under Section 3599 that was requested could have been used to establish both the potential merit of the underlying claim and a credible chance that Mr. Ochoa's state habeas counsel was ineffective as well, a credible chance, according to the ISDIS Court there, that he could overcome the procedural default. So you're not seeking a certificate of appealability on the ineffective assistance of counsel claim right now, today? It was not sought in the opening briefing regarding the Wiggins claim, no, Your Honor. On any claim? There are two separate issues in which a certificate of appealability was sought, one related to shackling at Mr. Ochoa's trial and a second related to Vore Dyer. My reference before was to the Wiggins claim specifically. Okay. So we can rule on those, can't we? Because those are not related to the mitigation expert. They are unrelated issues. That's correct, Your Honor. But we're asking this Court to hold those. Why shouldn't we just deal with what we can, though? What that will allow this case to do is to we're requesting that the case go back to the district court. But then if the appeal either proceeds on the issues that COA has been requested or if COA is denied and they proceed on to the same court, Mr. Ochoa would then have litigation pending in the district court as well as active litigation either in this court or the Supreme Court. Well, how would you, okay, if we, just assuming that the shackling, there's no entitlement to COA and the other issue, there's no entitlement to COA, then why don't we just rule that and then remand it, cleanly remand it on the aesthes? That would be, that would certainly be an option within this court's discretion. However, we think it would be more appropriate for the case to proceed as close in the unison. Because otherwise the case will proceed either on to appeal on those issues or like I said up to the Supreme Court while the rest of the litigation is still pending. Now certainly Your Honors could rule that COA is... On appeal in what way? You mean to the Supreme Court? If COA is denied, yes, then we would anticipate appealing those issues to the Supreme Court, Your Honor. Well, how is that harmful to you to be in the Supreme Court and in the district court? I believe that would be an effective use of judicial resources, just allowing the case to proceed as close as possible on the same track rather than being split into the district court and potentially the Supreme Court. But we briefed this, we're ready to rule. It's a bad use of resources to get everybody geared up to rule and study an issue clearly and to have nothing else that would contribute because you said that this aesthetics would not contribute and us then to reframe from ruling for what could be a couple of years or something. That's not a good use of resources. We'd all have to gear it up again. That is certainly an option, but if this case is remanded, then however the funding issue plays out below, this court will again have to likely, of course, look at the issue. Do you want to argue the shackling with the other issue at all or are you abandoning those? We are certainly not abandoning them. I'm certainly willing to answer any questions that your honors may have regarding them. We believe that the certificate of appealability is warranted on those. Okay, it's not clear to me that whether you're bringing a due process shackling claim on appeal or if you're just bringing an ineffective assistance of trial counsel claim based on the fact that the trial counsel did not object to the alleged shackling. We've requested a certificate of appealability on both issues, your honor. I apologize for any lack of clarity in the brief. We believe here that Mr. Ochoa is established through an affidavit that he was shackled during the punishment phase of his trial. One thing that separates Mr. Ochoa's case, I think, from other shackling issues is that when the shackling was visible, it was while he was literally walking to the jury box to testify at the punishment phase of his trial. There's an affidavit that states that Mr. Ochoa was shackled and that he walked directly in front of the jury box while proceeding to the stand. So we think it's clear that the district court's conclusion that Mr. Ochoa was not shackled or was not shackled was speculative is incorrect. And so I guess just as a practical matter referring to Judge Elrod's question, you're not contending that there is anything that could result or may result from the investigation and the funding you need, of course, for the investigation that would impact in any way your claim regarding the shackling. Yet you want us to wait to rule on it. That's correct, Your Honor. And the funding request below was primarily to pursue the Wiggins claim itself. Which you haven't raised yet. That's correct, Your Honor. So it seems unlikely that a mitigation investigation would provide supporting evidence regarding the shackling claim here. There are a couple of issues turning back to the issue of funding and what to do in light of... I'm sorry. We've got to go... If you're done with shackling and that's all you have to offer, whose burden is it to show whether or not it was proper to shackle if the district court is wrong? Assuming you're correct that the district court is wrong, and that's just assuming arguendo, isn't it your burden to show that he shouldn't have been shackled? I don't believe so at this stage, although this case presents an interesting complexity for this court that I believe suggests that the underlying issue is debatable. So in this case, we object at the time of trial to the shackling of Mr. Ochoa. There's simply no record as to whether the district court engaged in any fact findings. In fact, we know that the district court, the trial district court here at the state level, did not do so. In this scenario, we do not believe Mr. Ochoa should be required to essentially prove the negative in this scenario because of the ineffective assistance of counsel claim. Okay, on the Vordire claim, trial counsel did object. So what's the ineffectiveness? The ineffectiveness argument is basically about the timing of the objection there. So we know that Mr. Ochoa was indicted for the murder of two individuals. The actual offense here entailed the murder of five individuals. Now there is a notation during this objection that occurs, I believe after 11 jurors were sat, that trial counsel claimed they had previously requested the ability to question jurors about whether they were willing or whether they would automatically vote for a death sentence if they were aware that there was five victims. However, that motion or that objection, however it should be styled, is nowhere in the record. So we believe that trial counsel's failure to object while they were going through the questioning of the prior jurors raises the question of their ineffectiveness for not making a peraneous objection when they would have liked to initially question the jurors under Texas law. What's your best argument that Ochoa suffered any prejudice based upon any error by the trial counsel? We know from Morgan v. Illinois that jurors cannot automatically vote for the death sentence. Now I believe the prejudice question is frankly a very debatable issue, what the exact legal standard is here. I'm not aware of this court having any precedent ruling what the correct prejudice analysis should be for a Morgan claim that is not properly objected to at the time of trial. We believe that the fact that trial counsel did not question these jurors on it is evidence of prejudice, particularly in light of the fact that we know one of the jurors who did learn about the fact that there were five victims after she was sat, came to the court and said she could no longer be a fair juror based on the information that she then recalled from prior news stories. So the fact that one juror did come forward and say in this scenario I would not be able to be a fair juror we think is strong evidence of prejudice. Returning again to the question of funding under ISDIS, the state has made a couple of arguments that I would like to briefly address, neither of which I find are compelling. The first is the argument of waiver. Here Mr. Ochoa has presented or had presented a funding motion to the district court, which is now properly in front of this court on appeal. I guess I'm happy, you can return, but you don't have any other arguments to make on behalf of these two claims that are live right now before us. I just want to make sure that you're not planning to argue anything about these at the last two seconds of your time or something. I'm not, Your Honor. I think those issues are thoroughly covered in our briefing and we believe that the resolution of them is debatable for the reasons in our briefing as well as the arguments that we've made today. It's just odd to not argue for the things that you're actually trying to get a COA on. Well, here I believe there's a significant, based on the importance and some of the complexities that I've still not gotten to regarding the ISDIS issue, there's a significant amount of time that would be required to thoroughly go through that issue and we've decided that the ISDIS issue should take priority in our limited time during the argument today. And as I understand your position, it's not that you're okay with the ruling against you. You think it's impractical to make a ruling on those two claims now. So you're saying we should just reserve ruling and remand under ISDIS? That's exactly what I'm saying, Your Honor, that you should reserve ruling on those issues and remand. Turning back to the question of waiver, again here Mr. Ochoa presented a funding motion to the district court and now that ISDIS has come out while the case is pending on appeal, this court must give full import and effect to the ISDIS decision. The waiver argument we believe is irrelevant to the resolution of the question, which is one that looks back historically at the district court's ruling in 2014 regarding the funding motion. So the funding question has not been waived and the question for this court is how to give effect to ISDIS regarding the funding issue. The second argument that the Director makes that I would also like to touch on is that Section 2254E2 would bar evidentiary development of the underlying claim. We believe that this argument is incorrect and that if Mr. Ochoa is able to establish both cause and prejudice to overcome the procedural default of the underlying Wiggins claim, that he has not failed to develop the record for purposes of 2254E2 and that the Director's argument is contrary to both Supreme Court precedent as well as this court's precedent in Berentes v. Johnson. The Supreme Court in Williams v. Taylor linked the cause and prejudice inquiry to that of the failure to develop inquiry under Section 2254E2. Moreover they noted that the legislative intent behind Section 2254E2 appeared to mirror that of a prior Supreme Court decision, that being Kene Tamayo v. Reyes, in which those two issues were linked together. Have we had a case where we've remanded for funding where there wasn't even a Wiggins case claim yet? That's very odd. In Robertson v. Davis, a different panel of this circuit remanded the issue. I think it's important to point out that a Wiggins... Remanded the issue where there wasn't even a live Wiggins claim? There wasn't in the sense that the circuit actually denied a COA on the Wiggins claim, but then after... There had been one brought. There was one brought. Has anyone ever had a live dangling aesthetics type claim or even a funding claim where there's nothing to go with the funding claim? There's no COA been requested yet on something that would go with the funding claim. The best example again I have, Your Honor, is the Robertson case where the remand was granted, again as I said, after COA was denied. Denied on the point. That's correct. Isn't it odd to ask for funding for something that there's no claim being raised? I don't think so, and I think what that reflects is Mr. Ochoa's recognition that that funding was required both to establish the potential merit of the claim and to provide him a credible chance of overcoming procedural default. If he was attempting to pursue on a COA at this point, he would, I believe, in large part be having to argue that he thought the record was developed well enough to potentially win on the merits of that claim. Here requesting an appeal of the funding decision while not a COA reflects that Mr. Ochoa recognizes that additional funding was needed for him to succeed on the merits of that claim. Turning back to the 2254E2 question, this circuit in Berentes v. Johnson explicitly held that in scenarios where a petitioner has established cause to overcome procedural default, he has not failed to develop the record for purposes of that section, and that the more restrictive portions of that section do not apply in that scenario. We believe that the Director's interpretation of 2254E2 would turn both the Martinez v. Ryan as well as the Trevino v. Thaler decision into a nullity, because at that point there would be simply no way of succeeding on the underlying merits of the claim. At this stage, we also believe that it would be inappropriate for the court to deny funding based on potential downstream procedural hurdles. The funding that Mr. Ochoa seeks, as I mentioned before, is in large part to provide him the opportunity to both overcome the procedural hurdle as well as to help him succeed on the merits of the claim. Why don't you have to bring it together with a claim? Why isn't what you need to do to bring your AISTIS claim if you don't get funding when you file your Wiggins request? Why shouldn't those be married? For the same reasons that I stated before, Your Honor, regarding the fact that the funding itself was requested to allow Mr. Ochoa to both prove the merits of the claim as well as to potentially overcome the procedural default. In this scenario, I'm not aware of any circuit precedent requiring a COA to be requested or even granted. But you're not aware of anyone to the contrary either that would have considered it where there's no COA relevant? That is true, Your Honor. I believe it's not an issue that has ever been addressed by the Fifth Circuit whether COA must be requested on the underlying claim. Yes, because for the district court to adjudicate whether or not funding is necessary, though, it has to know what it is that you're trying to prove and whether or not the funding would actually help you prove that. And so this is in the abstract. You're not trying to prove anything because there's no claim being made. I don't think it's in the abstract at all, Your Honor. What Mr. Ochoa is requesting is the same type of remand that occurred in Robertson as well as in the Sordo decision. It's not the same, though, because in Robertson there was a Wiggins claim, albeit one that was denied. Yes, and Mr. Ochoa has certainly presented the Wiggins claim below. What he did not do here was seek a certificate of appealability as it went forward. And what the remand request would be would be similar to both Sordo and Robertson, that the funding orders, the denials be vacated, and then the district court have the opportunity to reassess those motions in light of the aesthetics opinion. At that point, then, an investigation would potentially be able to proceed. And then, of course, this would also be an area where the district court would have wide latitude as to what the next steps would be. But presumably, if he thought funding was warranted under the standard in aesthetics back in 2014 when it was requested, he would then set a time for an amended petition to be filed or something similar. But the Wiggins claim would be very much active if the case was sent back to the district court on a remand based on aesthetics. Because Mr. Ochoa would be placed then presumably in the same scenario he was when funding was denied. And the state knew that he was looking for the $35.99 funding in order to pursue a Wiggins claim. Isn't that right? That's correct. Absolutely, Judge Grace. We believe that of the cases that this circuit has dealt with regarding what to do with in light of aesthetics, Robertson provides the best example. And of course, this is a case where it was remanded for additional funding. In that case, that is the only case where the primary funding request was to pursue a Wiggins claim. Some of the other cases where funding has not been denied, has been denied, excuse me, and then a remand has not been issued, the district court either did not heavily rely on the substantial need language or the procedural default rule that were struck down by Aesthes, or the petitioner was unable to establish a potentially viable constitutional claim. Mr. Ochoa has in fact been able to do both of those two things here. So we are requesting that his case be remanded consistent with the Robertson and Sorto opinions for the district court to reconsider the issue in light of the Aesthes opinion. Why haven't you waived the substantial need question? Mr. Ochoa certainly did not challenge the substantial needs language below. That is apparent. But the Aesthes opinion has been issued and now this court must give effect to it. So below, Mr. Ochoa did raise the funding claim, it was of course, or the funding issue. It was denied by the district court. Now in resolving the appeal, this court must give full effect to Aesthes. We of course are not challenging. Well, give full effect to Aesthes doesn't mean that you should ignore whether claims are waived or not. But it's a different scenario than other waiver or potentially forfeiture analysis. Because here, the underlying issue that was raised was the funding question. Forfeiture is the actual, this is forfeiture. I completely agree. Because I don't think the waiver question is particularly relevant. We did not get into the distinction. But it's forfeiture. Why isn't it forfeited? It's not forfeited because this court cannot continue to apply the substantial needs test to Mr. Ochoa's case. We would not be. We would just be saying you forfeited it by not raising it in district court so we're not going to rule on it at all. But that would also be incorrect because what Mr. Ochoa has raised is a funding motion below which is now properly presented to this court on appeal. The propriety or lack thereof of the substantial need question has already been decided. What this court must now do is decide how to give Aesthes effect, which it must do. So waiver is not a relevant concern based on the fact that Mr. Ochoa presented the funding motion below and is now correctly proceeding on appeal. But you concede that it was not raised at all. We certainly concede that Mr. Ochoa did not challenge the substantial needs language in the district court. And Your Honor, at this time, unless there are... But Aesthes is a pretty recent decision, isn't it? It is. It came out in March of this year, Your Honor. But we were waiting on it. I mean, it wasn't a surprise and our case law says you have to still anticipate. I agree with that wholeheartedly, Your Honor. If the question now in Mr. Ochoa's case was the propriety of the substantial needs standard itself and whether it could still be used, I believe we may be looking at a potential forfeiture analysis. But because the Aesthes decision has come out, we know that that is not the standard that can be used anymore. We know that the funding motion was presented below and in determining the next steps, again, the court must give effect to Aesthes, which we believe would be correctly done by remanding the case to the district court for determination as to whether funding itself was warranted under Aesthes. If there are no further questions at this time, I will await the rebuttal argument, Your Honors. Thank you. May it please the court. The district court did not abuse its broad discretion in denying Ochoa's request for funding. Even under Aesthes, the lower court's reasoning is still sound and this court should affirm that decision. Further, jurists of reason would not debate the lower court's decision regarding the procedurally barred and meritless Shackling and Vordire claims. As such, this court should deny a COA. The issue of funding here ultimately turns on Ochoa's procedurally barred and meritless Wiggins claim. During the trial, the jury heard that Ochoa murdered his wife, their two daughters, his father-in-law, and his sister-in-law. He also shot but did not kill his other sister-in-law, Alma, who testified at trial. Because guilt was not in question, Ochoa's counsel made a full court press during the punishment phase. The defense's theory was that his actions were the result of a cocaine-induced delirium that impaired his ability to control his impulses. This was the result, they said, of a combination between frontal lobe damage and severe cocaine abuse. To that end, trial counsel put on 16 witnesses, including Ochoa's father, his brothers, friends and neighbors, law enforcement, and two experts, Drs. Nace and Simon. As the district court found in its order denying funding, the final order denying relief, and its order denying a 59E motion, trial counsel presented a full and extensive mitigation case. Ochoa continues to acknowledge this in his own briefing. His Wiggins claim is a matter of degrees and duplication. It amounts to precisely the kind of second-guessing and hindsight of which case law disapproves. Now I'd like to turn to the Supreme Court's decision in Aestas. There it's worth noting at the outset that the court reaffirmed the idea that the district court still has broad discretion and its denial is reviewed for abuse of that discretion. Now of course, Aestas reaffirmed that the test to be employed is reasonably necessary and in doing so, the court should use the following considerations as its guide. The potential merit of the claim that the applicant would pursue, if the applicant has a credible chance to clear any procedural hurdles standing in the way, and the likelihood that the requested services will generate useful and admissible evidence. Now turning to the district court's analysis here, my opposing counsel is correct that just like in Memu, the district court here quoted the familiar substantial need language. It did also cite a lengthy quote from Crutsinger. However, it is important to note what the court actually said when analyzing the merits of the funding request. It said this, after quoting the familiar language from Strickland v. Washington. It said, Ochoa does not complain that trial counsel did not know about the poverty, alcoholism, or abuse sought to be investigated and does not indicate how further investigation of these matters will substantially improve his chances of success. Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and that, of course, is from Strickland. So the crux of the denial of funding, as far as the court is concerned, at least as far as he tells us in his order, is actually the idea that the evidence that Ochoa seeks to develop amounts to mere duplication of what was already presented at trial. Now I think it's also worth noting that we know how the district court, of course, would deal with the claim as a whole, both the procedural bar aspect of the claim and the merits from its lengthy order, denying its final order, denying relief. But it is also worth noting that in its order, denying a 59E motion, after doing again another analysis of the procedural bar aspect, the failure of this claim to be able to meet the Martinez standard, and also the failure of the merits, the district court said this. Not only is the allegation insufficient to warrant habeas relief, it would be insufficient to grant investigative funding. Again, their large focus was on the failure of the merits. Indeed, trial counsel here, as the court noted time and again, presented an extensive case after a very full and thorough investigation. Now the court, when my opposing counsel was up here, there was some discussion about prior cases. I think this case comports more with the cases Kretzinger and Mamou. There this circuit has told us that where the district court's assessment, this language comes from Kretzinger, where the assessment coheres neatly with the recent pronouncements in ISDIS, this court can make a determination on the denial funding without having to send it back. In Mamou, the court said, because the reasons the district court gave for its ruling remain sound after ISDIS, we find no abuse of discretion. So too here, as in Mamou, the district court's reasoning, again going back to what it actually said about the claim that ISDIS or the OCHO was seeking funding for, the district court's reasoning remains sound. Where this claim is, we know what his claim is. We know the type of evidence that he would seek to provide the courts, because he actually did some investigation with the help of Texas Defender Service in preparing his petition, and he gave a very thorough explanation in his petition of what his claim would be. And it would simply be more of the same. It would be information about, for example, their life in Mexico and the poverty there. Well, Ochoa's father and his older brother testified about their life in Mexico. Ochoa, who testified himself at trial, said that he actually didn't remember his time in Mexico. It would be information regarding his father's alcoholism and the abuse of his mother. And yet again, Ochoa's father, Ochoa's brothers, and Ochoa himself testified as to these facts. So as with Mamou and Kretzinger, we know how the district court views this claim. We also know what the crux of its funding decision was. And the crux of that, the fact that it truly is just, there is no potential merit to the claim. That right there is the first consideration that was given by Estes. And if you also walk through the procedural bar analysis in its final order, in its order to 959E, it comports with its view, we know what the district court's view on the credible chance to clear any procedural hurdles that Ochoa would have. So this court is in a good position, after having full briefing on the claim, the claim especially after Estes, after the oral argument, this court is in a good position to simply make the decision, affirm the decision, excuse me, of the lower court and move on. Now it is worth noting, quickly, while talking about the procedural bar, that not only is there not a substantial IATC claim, which Martinez requires. But there also, Ochoa does fail to show ineffectiveness of State Habeas Council. We know that State Habeas Council provided a 53-page petition raising not only several IATC claims, but several IAAC claims in effective assistance of Appellate Council, including 101 pages of exhibits. Ochoa also provided billing records to the district court. Now we are not saying that these records are indeed complete or accurate, but even if we look at the evidence that Ochoa himself provided to the court, it's worth noting that that evidence demonstrates that there was 244 hours worked by State Habeas Council, and that included 31 hours of meetings with witnesses. You agree that we can remand if we choose to, that we're within our complete discretion to do so? Yes, Your Honor, I agree with that. Do you have a view about whether we should rule on the other two claims? I think that that certainly remains within the discretion of this court, Your Honor. Obviously, Robertson showed that you could certainly deny COA here, and I think that would be appropriate, and have that go on its way, have those claims filed by the wayside or proceeded on appeal, and then if you were to remand, you could remand on the funding issue alone and have the district court deal with that decision. But again, Your Honor, I think it's ... I feel certain that I know what the district court's going to do with any further funding motions based on, again, its multiple orders detailing fully its thoughts on the claim here, and not just the merits of it, but also the procedural bar problem that the claim has as well. I'd like to quickly touch on the ... You mentioned the number of hours, State Habeas Council. You said 200 ... 44, Your Honor. 244. I have 254. But you may be right, but only about 12 and a half hours were billed for non-record investigation. Is that right? Well, I will say, I don't know about that specific number. I have no reason to quobble with you, but I do think it's worth noting that 31 hours is worse than interviewing witnesses, traveling to and interviewing witnesses. I also think it's worth noting here, too, it's difficult for State Habeas Council to ... I mean, I think, again, we can look at what the district court said about the actual underlying merits of the Wiggins claim. You cannot fault State Habeas Council for failing to raise a wholly meritless claim. Here, where trial counsel presented 16 witnesses, including a witness I hadn't mentioned yet, the director of a rehabilitation program that Ochoa was in. I mean, the full court pressure was on for punishment phase. They knew it. This is very different than other cases like this, where people say that there was no mitigation and in fact, there isn't mitigation. Very different, Your Honor. This is the most extensive mitigation case ... I mean, one of the most that the court would see, isn't it, already? Yes, Your Honor. It certainly is up there, especially considering not only the number of lay witnesses, but also the fact they had two experts uniquely qualified in their fields, one with a medical degree from Penn, one with a medical degree from Yale. Yes, Your Honor. This is a very extensive mitigation case. I'd like to briefly touch on the E2 issue, particularly the cases that my opposing counsel mentioned, Williams and Berentes. There, it is important to note that Williams and Berentes in both of those cases, the cause that both petitioners sought to use to overcome the procedural bar were due to actions that trial counsels ... or, excuse me, trial counsel and post-conviction counsel lay outside of their own actions. In other words, a prosecutorial misconduct claim was what was at issue in Williams. There was also a prosecutorial misconduct claim at issue in Berentes. There was an ITC claim, but even the failure of counsel there was actually attributable to other parties. So, unlike here, where the cause that Ochoa would use to get around the procedural bar is exactly state habeas counsel's purported failure or lack of diligence to present the claim. Turning briefly to his Shackling and Vordire claims, regarding the Shackling claim, Ochoa simply fails to overcome the multiple procedural bars. He cannot satisfy the requirements under Coleman or Martinez, and further, he fails to actually show that he was visibly shackled and that he was harmed by that shackling. Now, first regarding his Shackling and Fact claim, his DEC claim, first it's worth noting that this is simply foreclosed from any review at this point. Ochoa, there was no objection at trial, as opposing counsel mentioned, but also the issue was not raised on direct appeal, nor was the issue of ineffective assistance of appellate counsel raised on state habeas for this particular issue. To the degree that he would use Coleman to get around the bar, well, the failure to raise is all on him, and Coleman tells us that the cause must exist somewhere outside the defense or the defense's counsel. And certainly here, Ochoa would be the one who would know the best whether or not he was actually shackled. Now, turning to what was actually said about the Shackling, he mentioned the affidavits by the mitigation investigator. The affidavit, the mitigation investigator in her affidavit regarding the Shackling simply said this, I recall being appalled when I saw Mr. Ochoa, who wore leg irons and shackles during his trial, walk to the witness stand. He passed by the jurors who were sitting in the jury box, shuffling his feet due to the restraint the leg chains imposed. There could be no doubt that Mr. Ochoa was shackled when he walked to the witness stand. It is worth noting that she does not say that he was visibly shackled. She doesn't say he was wearing leg chains and I could see them. She doesn't say she was wearing leg chains and there was no way the jury could not have seen them. She says simply that he was shuffling when he walked to the witness stand. And from that, the jury must have, I guess, inferred. But I think that right there is to the degree that it is evidence that was considered by the district court and we certainly are not waiving any arguments regarding the fact that these affidavits would not be evidence that would be able to be considered by the district court. We certainly aren't also stipulating to the truth of the affidavit. But even assuming arguendo, that it is true and that it was properly considered, it is worth noting that the way that she phrases it actually leads to the implication or the assumption, rather, that he was, in fact, not visibly shackled. And if he wasn't visibly shackled, Deck tells us that it's only visible shackles that fall within or that run afoul of any constitutional concerns. So he fails to show that he was visibly shackled. He fails to also meet the standard. I'm probably not familiar enough with shackles. You're telling me there's some shackles that could not be visible? And there may be. I was a trial judge a long time ago and I sent hundreds of people to prison in a lot of them wore shackles, but usually they were visible. Yes, Your Honor. I mean, there certainly are shackles that are visible. But if the term shackling, it depends on how the term shackling is being used. And also, I mean, it is worth noting that something like a knee brace would not be visible. In fact, there are several means now, or at least at the time that Ochoa was tried, there were several means available to a trial judge that would not be visible, that would still shackle somebody, but that would not be visible to the jury. And it's worth noting that there simply is no explanation by the record. Indeed, the record itself being silent, the trial record itself being silent, I think is definitely, I mean, that's evidence that this court can absolutely consider as to whether or not he was shackled and whether or not he was visibly shackled. In fact, the trial court would only be under duty to make some statement on the record about the reasons why he was being shackled and the manner in which he was being shackled if the shackles were visible, because again, it's only visible shackles where the constitutional concerns start to become implicated. It's also worth noting that Ochoa fails to show that there was a substantial and injurious effect or influence on the verdict. That coming from this court's decision in Hatton regarding trial counsels, regarding his ineffective assistance of trial counsel, again, state habeas counsel cannot be ineffective for failing to raise a meritless claim. But even assuming here that there was some claim to be raised, again, he fails to show that there were visible shackles such that would have required or implicated trial counsel such that they should have made an objection on the record. Your Honor, my client's visibly shackled. We feel that there needs to at least be something put on the record about why. And further, he fails to show the prejudice, he fails to overcome any prejudice analysis as this court laid out in Tammes. Briefly touching on the Vordire claims, Your Honor, again, just like with the Shacklin claims, he fails to overcome the procedural bars for both the Vordire, the trial court error claim and the ineffective assistance of trial counsel claim, and both are plainly meritless. Indeed, here, trial counsel made an objection. They made an objection that would have preserved error on the record. So trial counsel cannot be ineffective. Trial court also did not abuse its discretion, Your Honors, because it is well within its discretion to limit the questions as it shows. Indeed, if he were asked, if he were able to ask about the number of victims, Ochoa may have also wanted to ask about the fact that one of the victims was his seven-year-old daughter, one of the victims was his eight-month-old daughter. One of the victims, his seven-year-old daughter, he actually, after shooting and killing his He goes back into his bedroom, he reloads his 9mm Ruger, he comes back into the living room, sees his seven-year-old daughter and chases her into the kitchen and shoots her four times. These are all aggravating circumstances, Your Honors. But of course, the trial court is well within its discretion to limit the questions that a person is able to ask regarding the underlying facts or the actual facts of the case. Now unless this court has any further questions, I ask that it affirm the lower court's denial of funding and deny a COA as to the other claims raised. Thank you, counsel. Remand is still the appropriate remedy in this case based on the ISDIS decision and the district court's reliance on the substantial need funding. Now the director's argument seems to be that we know already how the district court will rule in light of the ISDIS decision. We could look to see if it was reasonable. We could apply the correct test and we could determine whether it could be reasonable. We could say that it would not be reasonable necessary because it's cumulative and it wouldn't be admissible. Couldn't we? Could the court do that? Certainly. But we don't believe that would be appropriate based on the district court's reliance first on the substantial need standard. The operative language it used being that Mr. Ochoa had not shown how he would substantially improve his chances. But then after that part, the district court went through and discussed why it was cumulative in some excruciating detail. And I believe there are two issues with the district court's analysis at that point. First when we're at the 3599 funding stage, particularly with respect to a Wiggins claim, it cannot be said that the evidence will simply be cumulative, particularly when no objectively reasonable investigation has not yet occurred. Well, we're allowed to look at the potential merit and the likelihood that they will generate useful and admissible evidence. Potential merit. It's not meritorious if it's merely cumulative. Isn't that accurate? Looking at it in the light of a Wiggins claim where we haven't conducted the investigation, again, I would dispute that we can say any evidence that might be uncovered would be cumulative. What would be uncovered that would not be cumulative if it's terrible upbringing? And I'm not minimizing, I'm not being flippant about it. There's evidence that his dad was this horrible alcoholic and abused his mother and did all these things. What is it that would be different? Here we certainly don't dispute that Mr. Ochoa's trial counsel did present mitigating evidence. But we believe that the thorough, proper investigation that Mr. Ochoa would be entitled to could certainly show mitigation evidence that is not cumulative. What would it show that would be different other than that he had a horrible childhood? And to paint with a broad brush, the trial court here agrees that he had a horrible childhood. Again, when you're doing a mitigation investigation, it's impossible to know before it's done what that will uncover. So we could find evidence potentially of sexual abuse, potentially evidence of mental illness, certainly other types of mitigating evidence that are not in the record. Okay. Then what about the fact that it wouldn't be admissible anyway? It certainly would be admissible. I mean, if we have witnesses speaking about Mr. Ochoa being sexually abused or potential signs of mental illness, it certainly would be admissible, Your Honor. It would be barred, wouldn't it? You can't have new evidence. You can have new evidence, both with a Wiggins claim and also if you're able to establish procedural default of that claim below. Certainly in federal court, you can add new evidence if you can excuse the procedural default, which can be done by looking at state habeas counsel's failure to investigate evidence. Now, just to correct the hours number before, the billing records show that trial counsel did spend approximately 12 and a half hours interviewing witnesses on not the 31 that was suggested before. I mean, that may be accounted for potentially by travel time, but it's a significantly lower number than was offered before. And turning back to Judge Elrod's question about what can be shown, it's important to consider the Supreme Court's dictates in cases such as Sears versus Upton, which have held that the presentation of some mitigating evidence does not obviate the need to consider whether an objectively unreasonable investigation prejudiced the defendant. And while we certainly recognize that mitigation evidence was put on, there's a significant amount of evidence from the trial mitigation specialist about how it was delayed, abbreviated, incomplete, and trial counsel themselves in the continuance motion noted that they would be ineffective if they had to go to trial. When you're conducting the analysis here, you cannot simply say by looking solely at the face of the record without considering the underlying investigation itself that potentially prejudicial evidence cannot be uncovered for Mr. Ochoa. So we believe that it would be appropriate in this scenario to remand this case to the district court, to allow the district court to reassess the funding decision, particularly because as I said, the operative wording used by the district court was that Mr. Ochoa had not shown how the requested funding would substantially improve his chance of success. That's a decision that properly rests within the district court, and it should be allowed the broad discretion and wide latitude that it has in determining issues under Section 3599, rather than just simply decided on the face of the record at this time by this court. If there are no further questions, at this time I will conclude our rebuttal argument. Thank you, counsel. I appreciate it. This case is submitted. Thank you.